IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| GALTERE, INC., | ) | Case No. 4:23-cv-00196-SMR-HCA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HARVEST CAPITAL ASSET | ) | |
| MANAGEMENT, LLC (Illinois), and | ) | COMBINED ORDER ON MOTIONS |
| HARVEST CAPITAL ASSET | ) | FOR SUMMARY JUDGMENT |
| MANAGEMENT, LLC (Iowa), | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| HARVEST CAPITAL ASSET | ) | |
| MANAGEMENT, LLC (Illinois), and | ) | |
| HARVEST CAPITAL ASSET | ) | |
| MANAGEMENT, LLC (Iowa), | ) | |
| | ) | |
| Counterclaimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GALTERE, INC., | ) | |
| | ) | |
| Counter Defendant. | ) | |

Plaintiff Galtere, Inc. ("Galtere") lent money to Harvest Capital Asset Management, LLC ("Harvest Capital") to fund a Brazilian farming operation. Galtere has now sued Harvest Capital, alleging that it has not paid back the money pursuant to the terms of the parties' agreement. Not only does Harvest Capital dispute Galtere's legal position, but it also alleges that the filing of the lawsuit amounts to an abuse of process.

I.     BACKGROUND

A.  *Factual Background*

In 2007, Galtere and Harvest Capital engaged in talks regarding a potential investment by Galtere in a Brazilian limited liability company to purchase, develop, and operate a farm in Brazil.

The parties later executed an agreement ("Transaction Summary") dated March 25, 2008.  [ECF No. 1-3].  The Transaction Summary is a sparse, one-page document organized into three sections with 11 bullet points in total.  The document reflects that Galtere and Harvest Capital agreed to create the Galtere Real Assets Fund ("GRAF") for the specific purpose of investing in foreign agricultural assets.  The Transaction Summary refers to GRAF as the "Fund."

One section of the Transaction Summary provided that Galtere would "fund an agreed upon monthly budget for the Fund [GRAF], this funding will be recovered, based on agreed upon schedule, when the Fund begins to generate fees[.]  Once the Fund is generating fees, all budgetary expenditures (salary, expenses, etc.) will be paid prior to distribution to owners."  The manager of Harvest Capital during this time period explained that the funding contemplated in the provision was prepaid salaries and expenses, it was not an equity investment.  [ECF No. 40-4 at 6].  Galtere provided funding to GRAF in the amount of $802,000.  [ECF No. 44-1 ¶ 17].  Neither party disputes that GRAF never began generating fees.  [ECF No. 43-1 ¶ 10].

The third section of the Transaction Summary sets forth the terms of a $12 million[1] investment by Galtere in Two Rivers Farm ("TRF").  [ECF No. 1-3].  Harvest Capital manages TRF which is a limited liability company formed to invest in a Brazilian limited liability company which invests in purchasing, developing, and operating a farm in Brazil.  [ECF No. 43-1 ¶ 7].  Galtere's investment in TRF was an entirely separate transaction than the $802,000 in funds at dispute in this case.  *Id.* ¶ 9.

Galtere argues that the $802,000 was a loan that Harvest Capital was obligated to repay as soon as the farm began making money which was allegedly as early as 2019.  [ECF No. 39-3

---

[1] The undisputed facts show that Galtere's investment in TRF is currently $15 million. [ECF No. 43-1 ¶ 8].

at 38]. Rather than repay the loan, Galtere claims that Harvest Capital began taking management fees and paying distributions to owners in 2020. *Id*. Galtere claims this was a breach of contract under the terms of the parties' agreement.

### B. Procedural Background

Galtere commenced this lawsuit to recover the $802,000 it asserts that it lent to Harvest Capital. [ECF No. 1]. The Complaint brings five claims: (1) breach of written contract; (2) breach of oral contract; (3) promissory estoppel; (4) unjust enrichment; and (5) fraudulent misrepresentation. The claim for fraudulent misrepresentation was alleged against Scott Oakes, a manager and member of Harvest Capital.

After filing an initial answer denying Galtere's allegations, Harvest Capital filed an amended answer which asserted a counterclaim for abuse of process. [ECF Nos. 9, 24]. Harvest Capital alleges that Galtere instituted this lawsuit in order to pressure it into repaying its investment in TRF and GRAF. [ECF No. 24 at 9–10]. Both parties now move for summary judgment. [ECF Nos. 39, 40].

### II.    DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Meyer v. McKenzie Elec. Coop., Inc.*, 947 F.3d 506, 508 (8th Cir. 2020) (citing Fed. R. Civ. P. 56(a)). A material fact is one that "may affect the outcome of the lawsuit." *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016) (citation omitted). A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the nonmoving

party is entitled to the benefit of all reasonable inferences that may be drawn from a record viewed in the light most favorable to it. *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). The nonmoving party must identify "specific facts" in dispute that preclude the entry of summary judgment, it is not enough to "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586– 87 (1986).

The Federal Rules of Civil Procedure permit a party to seek partial summary judgment on some claims or defenses, or a portion of a claim or defense. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or part of each claim or defense—on which summary judgment is sought."); *see also Hawkins v. Tom's Tree Serv., LLC*, Case No. 4:23-cv-00224-SMR-WPK, 2024 WL 3551148, at *2 (S.D. Iowa June 20, 2024) (citation omitted).

When there are cross-motions for summary judgment it does not mean that one party is entitled to judgment as a matter of law. *Hot Stuff Foods, LLC v. Houston Cas. Co.*, 771 F.3d 1071, 1076 (8th Cir. 2014) (citation omitted). Cross-motions for summary judgment also "does not mean the parties are taking inconsistent positions." *Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 614 (N.D. Iowa 2019); *accord Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983) ("[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits.") (citation omitted).

A court must separately consider each motion for summary judgment. *Wright v. Keokuk Cnty. Health Ctr.*, 399 F. Supp. 2d 938, 946 (S.D. Iowa 2005) (cleaned up) (citation omitted). On

cross-motions for summary judgment, the summary judgment standard applies "with equal force" to each motion. *Dunn v. Doe 1–22*, 670 F. Supp. 3d 735, 773 (S.D. Iowa 2023) (citation omitted). This means that the Court will view the summary judgment record in the light most favorable to Galtere when considering Harvest Capital's motion, and will view the record in the light most favorable to Harvest Capital when considering Galtere's motion. *See Weber v. Travelers Home & Marine Ins. Co.*, 801 F. Supp. 2d 819, 825 (D. Minn. 2011).

### B.  *Harvest Capital's Motion for Summary Judgment*

#### 1.   Breach of Contract Claims

##### a.   Written Contract

Under Iowa law, "[t]he cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract." *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa 2008) (citation omitted).  The language used by the parties in the contract is the best evidence of their intentions.  *NevadaCare, Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 466 (Iowa 2010) (holding that "the most important evidence of the parties' intentions at the time they entered into the contract is the words of the contract") (citing *Wells Dairy, Inc.*, 752 N.W.2d at 436).  A contract will be enforced as written "if the intent of the parties is clear and unambiguous from the words of the contract itself." *DuTrac Cmty. Credit Union v. Radiology Grp. Real Estate L.C.*, 891 N.W.2d 210, 216 (Iowa 2017) (citation omitted).

Interpretation of a contract is a legal issue unless it turns on extrinsic evidence. *Alta Vista Props., LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 726 (Iowa 2014) (citation omitted).  The Iowa Supreme Court is guided by the general rules of contract interpretation set forth in the Restatement (Second) of Contracts.  *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 687 (Iowa 2020) (citation omitted).

The transaction at issue in this case is evidenced by a single document entitled "Galtere–Harvest Capital Transaction Summary" ("Transaction Summary"). [ECF No. 39-3 at 49]. The Transaction Summary is one-page, bullet point agreement. Galtere argues that it "loaned Harvest Capital One $802,400.08 to pay salaries and expenses in connection with its operation of the farm." [ECF No. 1 ¶ 15]. The company contends that its position is supported by the following provision in the Transaction Summary:

> Galtere will fund an agreed upon monthly budget for the Fund, this funding will be recovered, based on agreed upon schedule, when the Fund begins to generate fees[.] Once the Fund is generating fees, all budgetary expenditures (salary, expenses, etc.) will be paid prior to distributions to owners. *Id*.

[ECF No. 1-3].

Harvest Capital argues that "[n]o reasonable interpretation of the Transaction Summary reflects an intent for an alleged loan as articulated by Galtere in this lawsuit." [ECF No. 40-1 at 8]. It points out that "the Fund" in the above-quoted provision is defined in the agreement as GRAF—not TRF. There is no allegation by Galtere that GRAF generated fees that would trigger the repayment schedule under the Transaction Summary.

In its response, Galtere accuses Harvest Capital of "ignor[ing] the parties' intent and agreement." [ECF No. 43 at 2]. According to Galtere, the parties had an agreement and understanding that it would receive its money back whenever the structure that operated the farm began making profit. Galtere insists that this extrinsic evidence "can and must be considered in contract litigation." *Id*. at 3.

Introducing extrinsic evidence will typically implicate the parol evidence rule. *C&J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 85 (Iowa 2011). The parole evidence rule prohibits extrinsic evidence "to vary, add to, or subtract from a written agreement." *Garland v. Branstad*, 648 N.W.2d 65, 69 (Iowa 2002) (citation omitted). It does permit the introduction of extrinsic

evidence to assist "interpretation when it sheds light on the situation of the parties, antecedent negotiations, the attendant circumstances, and the objects they were striving to attain." *Kroblin v. RDR Motels, Inc.*, 347 N.W.2d 430, 433 (Iowa 1984) (citation omitted).  However, "[e]xtrinsic evidence may be offered to show the meaning of what the parties said, but not to show what they meant to say." *McNeal v. Wapello Cnty.*, 985 N.W.2d 484, 491 (Iowa 2023) (citation omitted).

Iowa courts apply two principles relating to the parol-evidence rule: "(1) the rule that parol evidence is admissible to establish the meaning of a contract, and (2) the rule that parol evidence is inadmissible to contradict (or in some cases supplement) a term of a contract." *U.S. Bank, N.A. v. Bittner*, 986 N.W.2d 840, 847 (Iowa 2023) (citations omitted).

Clearly, Galtere seeks to introduce evidence to alter the terms of the Transaction Summary. The company acknowledges that the transactions could have been documented better, but insists "there was a clear understanding and consensus between the parties as to the agreement on which Galtere's claims are based." [ECF No. 43 at 4].  Galtere goes on to claim that evidence of the negotiations and course of dealing between the parties will "resolve any ambiguity as to the meaning of the Transaction Summary." *Id*. at 4–5.

The issue with this position is that there is nothing ambiguous about the Transaction Summary.  The agreement clearly and expressly defines that structure formed for the investment as the "Galtere Real Asset Fund." [ECF No. 1-3].  The repayment provision states that "funding will be recovered based on [an] agreed upon schedule, when the Fund [Galtere Real Asset Fund] begins to generate fees.  Once the Fund [Galtere Real Asset Fund] is generating fees, all budgetary expenditures (salary, expenses, etc.) will be paid prior to distribution to owners." *Id*.

Galtere, at best, seeks to introduce extrinsic evidence to show what the parties "meant to say" when they executed the Transaction Summary. *McNeal*, 985 N.W.2d at 491 (citing *Bankers*

*Tr. Co. v. Woltz*, 326 N.W.2d 274, 276 (Iowa 1982)).  This is not a permissible use of extrinsic evidence under Iowa law.  There is no material dispute of fact and Harvest Capital is entitled to summary judgment on Galtere's breach of written contract claim.

b.  Oral Contract

Count II of the Complaint brings a claim for breach of an oral contract.  Galtere asserts that it entered into an oral contract with Harvest One on the same terms that it allegedly agreed to in written form.

Oral contracts are generally enforceable under Iowa law.  *Faught v. Budlong*, 540 N.W.2d 33, 35–36 (Iowa 1995) (quoting *Elkader Coop. Co. v. Matt*, 204 N.W.2d 873, 875 (Iowa 1973)).  To prove the existence of an oral contract, Galtere must establish "the terms of the alleged oral contract are 'sufficiently definite for a court to determine with certainty the duty of each party and the conditions relative to performance.'" *Nationwide Agribusiness v. Structural Restoration, Inc.*, 705 F. Supp. 2d 1070, 1085 (S.D. Iowa 2010) (quoting *Seastrom v. Farm Bureau Life Ins. Co.*, 601 N.W.2d 339, 346 (Iowa 1999)).

Harvest Capital seeks summary judgment on Count II.  It contends that a claim for breach of an oral contract is barred by Iowa's statute of frauds.  Galtere argues that the statute of frauds does not apply to the oral contract and, even if it did, there is an exception that applies in this case.  Like most states, Iowa has a statute of frauds requiring that any contract that cannot be performed within one year may not be proven by oral evidence.  Iowa Code § 622.32(4) ("[N]o evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by the party's authorized agent . . . "[t]hose that are not to be performed within one year").  The statute of frauds does not invalidate oral contracts, it is simply a rule of evidence that "renders incompetent oral proof of such promises." *Pavone v. Kirk*, 801 N.W.2d 477, 491

(Iowa 2011) (citation omitted). In other words, if the contract falls within the purview of the statute of frauds, it must be in writing otherwise any evidence regarding formation or the terms of the contract is not admissible. *Pollmann v. Belle Plaine Livestock Auction, Inc.*, 567 N.W.2d 405, 407 (Iowa 1997) ("The statute of frauds does not void such oral contracts; it simply makes oral proof of them incompetent.").

Harvest Capital argues that the oral contract alleged by Galtere is subject to the statute of frauds because it was not performed within one year. Galtere responds that the statute of frauds does not apply if it was possible to perform the contract within one year, regardless of whether it was actually performed in one year. *See Harriott v. Tronvold*, 671 N.W.2d 417, 422 (Iowa 2003) ("[C]ontracts of uncertain duration are simply excluded" the statute of frauds "covers only those contracts whose performance cannot possibly be completed within a year.") (citation omitted).

Notwithstanding the issue of whether the purported oral contract was covered by Iowa's statute of frauds, there does not appear to be a genuine material dispute about whether the parties in fact entered into an oral contract. Galtere and Harvest Capital agree that they executed a written contract wherein Galtere agreed to pay salaries and expenses associated with operation of the Brazilian farm. [ECF No. 44-1 ¶¶ 15–17]. Nowhere in the summary judgment record is there reference to, much less evidence of, an oral contract between the parties.

"While the determination of whether an oral contract existed is ordinarily a question of fact, summary judgment is appropriate if 'a party has not offered sufficient evidence to support the existence of a contract.'" *Andersen Invs., LLC v. Factory Card Outlet of Am., Ltd.*, 630 F. Supp. 2d 1030, 1035 (S.D. Iowa 2009) (quoting *Schaller Tel. Co. v. Golden Sky Sys.*, 298 F.3d 736, 744 (8th Cir. 2002)). Furthermore, "[i]n order to find that an oral contract existed, there must be

sufficient evidence of its terms to ascertain the duties and conditions established." *Audus v. Sabre Comms. Corp.*, 554 N.W.2d 868, 871 (Iowa 1996) (citation omitted)

In its resistance, Galtere merely points out that the Complaint alleges the existence of an oral contract in the Complaint. [ECF No. 43 at 7]. This is not sufficient to survive summary judgment. *See Washington v. City of St. Louis*, 84 F.4th 770, 774 (8th Cir. 2023) (noting that a party may not resist a summary judgment motion "by reference only to its pleadings") (citation omitted). Summary judgment in favor of Harvest Capital on Count II is appropriate.

### 2.   Remaining Claims

Finally, Harvest Capital moves for summary judgment on the fraudulent misrepresentation claim in Count V, which Galtere brought only against Defendant Scott Oakes. After Harvest Capital moved for summary judgment, Galtere voluntarily dismissed the claim against Oakes. [ECF No. 38].

In its resistance to the motion, Galtere points out that Harvest Capital did not move for summary judgment on Count III and Count IV of the Complaint. Harvest Capital responds that it has moved for summary judgment on all claims, pointing to its motion. [ECF No. 46 at 1] ("As a result, there are no issues of fact, and Defendants are entitled to a judgment on Galtere's claims of breach of written contract, breach of oral contract, *promissory estoppel, unjust enrichment*, and fraudulent misrepresentation as a matter of law.") (quoting ECF No. 40 ¶ 9). However, the brief submitted in support of the motion for summary judgment makes no mention of either claim. *See* [ECF No. 40-1].

Although Harvest Capital clearly intended to move for summary judgment on all counts, a brief mention in a motion is insufficient under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(a) (requiring that a party seeking summary judgment must "identify[] each claim or

defense—or the part of each claim or defense—on which summary judgment is sought."). The United States Court of Appeals for the Eighth Circuit has held that "[a] district court commits reversible error by granting summary judgment on an issue not raised or discussed by the parties if the losing party did not have notice and an opportunity to respond." *Montgomery v. City of Ames*, 749 F.3d 689, 697 (8th Cir. 2014); *see also Heisler v. Metro. Council*, 339 F.3d 622, 631 (8th Cir. 2003) (holding that the defendant's "request that the court dismiss the lawsuit in its entirety, without specifically mentioning or arguing the retaliation claim, was insufficient to put the issue before the district court."); *Am. Red Cross v. Cmty. Blood Ctr. of the Ozarks*, 257 F.3d 859, 863 (8th Cir. 2001) (concluding that a district court granted summary judgment *sua sponte* when three claims "were never raised" in the defendant's motion).

However, the Court will grant leave to the parties to file a motion for summary judgment on Galtere's remaining claims by **October 25, 2024.** Resistances and replies thereto will be governed by the default deadlines set forth in the Local Rules.

### C. Galtere's Motion for Summary Judgment

#### 1. Abuse of Process Claim

Harvest Capital alleges that Galtere improperly filed this lawsuit to harass and pressure it into repaying Galtere's investments in TRF and GRAF by intentionally conflating the transactions and mischaracterizing them as loans. Harvest Capital claims that Galtere has pressed it for years to buy out the investment in TRF. It argues this lawsuit is the latest attempt at that goal.

Galtere seeks summary judgment on the abuse of process counterclaim. It argues that it was not an abuse of process for the company to initiate this lawsuit to pursue its claim for money.

a. Legal Standard

An abuse of process claim "is a common law tort where a person uses a legal process against another to accomplish an improper purpose." *DreamTeam Dev., LLC v. Irlbeck*, Case No. 4:23-cv-00209-SMR-SBJ, 2023 WL 8522982, at \*5 (S.D. Iowa Nov. 3, 2023) (citing *Mills Cnty. State Bank v. Roure*, 291 N.W.2d 1, 4 (Iowa 1980)). Abuse of process is sometimes considered "a form of extortion" by perverting legal processes for unlawful or improper purposes. *Sarvold v. Dodson*, 237 N.W.2d 447, 449 (Iowa 1976) (citation omitted).

An abuse of process claim has three elements: "(1) the use of the legal process, (2) in an improper or unauthorized manner, and (3) that damages were sustained as a result of the abuse." *Stew-McDevelopment, Inc. v. Fischer*, 770 N.W.2d 839, 849 (Iowa 2009) (citing *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001)). The improper or unauthorized use of the legal process must be "*primarily* for an impermissible or illegal motive." *Id.* (quoting *Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa 1990)). It is not enough that a civil action is instituted "that inconveniences a defendant or for one filed in expectation of settlement." *Palmer v. Tandem Mgmt. Servs., Inc.*, 505 N.W.2d 813, 817 (Iowa 1993) (citation omitted).

An improper purpose that supports an abuse of process claim often arises when a lawsuit is filed with the intent "to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it." *Grell v. Poulsen*, 389 N.W.2d 661, 663 (Iowa 1986) (quoting Restatement (Second) of Torts § 682 (1981)). Iowa courts take a "very restrictive view" of the improper purpose element. *Palmer*, 505 N.W.2d at 817 (describing the "essence" of the tort as "an improper purpose for using the legal process") (citation omitted). It is not enough that the plaintiff knows "there is no entitlement to recover the full amount of damages sought." *Id.*

Evidence that the plaintiff had a malicious purpose does not satisfy the improper purpose element either. *Grell*, 389 N.W.2d at 664.

### b.  Analysis

Harvest Capital asserts that summary judgment on its counterclaim is improper because there is a dispute of material fact regarding Galtere's motive in bringing this action.  It is undisputed that Galtere has requested every year since 2008 that Harvest Capital buy out or repay its investment in TRF.  [ECF No. 45-1 ¶ 13].  Its $15 million investment in TRF remains in the fund. *Id*. ¶¶ 10, 12.  Thus, Harvest Capital alleges that Galtere's motive in this lawsuit was to gain leverage in buyout negotiations.  *See Grell*, 389 N.W.2d at 663 (recognizing that an improper purpose is when a party seeks "to put pressure upon the other to compel him to pay a different debt").

Galtere argues that it has done nothing more than carry this lawsuit to its authorized conclusion to collect money it loaned to Harvest Capital.  *See Wilson*, 464 N.W.2d at 267 (holding that it is not an abuse of process for a party to do "nothing more than carry the process to its authorized conclusion, even with bad intentions").

As already detailed, the standard for an improper purpose under Iowa's abuse of process case law is extraordinarily high.  *Thomas v. Marion Cnty.*, 652 N.W.2d 183, 186 (Iowa 2002) (observing that "[a]buse of process claims routinely fail under the burden we require for the second element." (cleaned up)); *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 209 (Iowa 1995) (noting that the second element "is difficult to establish").  The second element requires "some act in the use of process that was not proper in the regular prosecution of the proceeding." *Grell*, 389 N.W.2d at 664 ("Proof of an improper motive by the person filing a lawsuit, even a malicious purpose, does not satisfy that [second] element.").

There is nothing in the summary judgment record that establishes that Galtere took any action during this case that is not proper in the regular prosecution of a breach of contract claim. As already discussed, the Court finds that Galtere's claims are without merit, but Harvest Capital has not shown that the company has done anything other than "carry the process to its authorized conclusion." *Wilson*, 464 N.W.2d at 267; *Johnson*, 533 N.W.2d at 209 ("Proof of an improper motive or even malicious intent in the filing of the lawsuit does not satisfy the second element.") (citation omitted). Harvest Capital implies that Galtere seeks to use this lawsuit as leverage in buyout negotiations, but has not adduced any evidence that the company has in fact done so. A party opposing summary judgment may not "'rest on mere allegations or denials' but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (quoting Fed. R. Civ. P. 56(e)). Galtere is entitled to summary judgment on Harvest Capital's counterclaim for abuse of process.

### III.     CONCLUSION

For the reasons discussed above, Galtere's Motion for Summary Judgment on the counterclaim is GRANTED. [ECF No. 39]. Harvest Capital's Motion for Summary Judgment is GRANTED on both claims for breach of contract in Count I and Count II. [ECF No. 40].

The Court will GRANT leave to the parties to file a motion for summary judgment on Galtere's remaining claims by **October 25, 2024.** Resistances and replies thereto will be governed by the deadlines set forth in the Local Rules.

IT IS SO ORDERED.

Dated this 4th day of October, 2024.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT