IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| GALTERE, INC., | Case No. 4:23-cv-00196-SMR-HCA |
| Plaintiff, | |
| v. | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| HARVEST CAPITAL ASSET MANAGEMENT, LLC (Illinois) and HARVEST CAPITAL ASSET MANAGEMENT, LLC (Iowa), | |
| Defendants. | |

Before the Court are cross-motions for summary judgment on claims for promissory estoppel and unjust enrichment brought by Plaintiff Galtere, Inc. ("Galtere"). The Court previously granted summary judgment to Defendant Harvest Capital Management, LLC ("Harvest Capital") on Galtere's claims for breach of written and oral contract, and now considers whether Galtere may proceed on alternative theories of recovery for the same underlying transaction.

I.     BACKGROUND

In 2007, Galtere and Harvest Capital engaged in discussions regarding a potential investment in a Brazilian farming operation by Galtere. These negotiations led to the execution of a Transaction Summary dated March 25, 2008, which provided that Galtere would "fund an agreed upon monthly budget for the Fund, this funding will be recovered, based on agreed upon schedule, when the Fund begins to generate fees." [ECF No. 48-2 ¶ 4]. Galtere provided funding of $802,400. [ECF No. 49-2 ¶ 25]. Neither party disputes that GRAF never began generating fees.

In the Court's previous order on summary judgment, it found that the agreement—memorialized as Transaction Summary—unambiguously defined the structure for investment as

the Galtere Real Asset Fund ("GRAF") and conditioned repayment on GRAF generating fees. [ECF No. 47 at 7]. Because this condition never occurred, summary judgment was granted to Defendants on Galtere's express contract claims. *See id.*

Galtere now argues its remaining claims for promissory estoppel and unjust enrichment are based on separate oral promises made by Harvest Capital before the Transaction Summary was executed. [ECF No. 49-1 at 4–6]. According to Galtere, Harvest Capital promised to repay the funds when the farm became profitable and before taking management fees or making distributions. Harvest Capital contends these claims are precluded by the existence of an express written contract covering the same subject matter.

## II.   DISCUSSION

### A. Legal Standards

#### 1. Motion for Summary Judgment

Summary judgment is proper when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the nonmoving party is entitled to the benefit of all reasonable inferences that may be drawn from a record viewed in the light most favorable to it. *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). The nonmoving party must identify specific facts in dispute; mere metaphysical doubt is insufficient. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

2. Unjust Enrichment

The dispositive issue is whether Galtere's implied contract claims of unjust enrichment and promissory estoppel are precluded by the existence of the Transaction Summary. *See Kunde v. Est. of Bowman*, 920 N.W.2d 803, 807 (Iowa 2018) (observing that the doctrine of unjust enrichment is "based upon the concept of implied contract") (citation omitted). Unjust enrichment is "an equitable principle mandating that one shall not be permitted to unjustly enrich oneself at the expense of another or to receive property or benefits without making compensation for them." *Johnson v. Dodgen*, 451 N.W.2d 168, 175 (Iowa 1990) (citation omitted). However, this equitable remedy is not available where an express contract exists covering the same subject matter. *Legg v. W. Bank*, 873 N.W.2d 763, 771 (Iowa 2016) (quoting *Chariton Feed & Grain, Inc. v. Harder*, 369 N.W.2d 777, 791 (Iowa 1985)).

The Iowa Supreme Court has explained that an implied contract theory may only coexist with an express contract in two limited circumstances: (1) where recovery is sought for matters not covered or agreed upon in the contract, such as when a builder seeks payment for extra work outside the contract scope; or (2) where a contract is silent on a particular term that circumstances suggest should be supplied by implication, such as reasonable compensation in an employment agreement. *Kunde*, 920 N.W.2d at 807–08. Neither exception applies where a party simply seeks different terms of performance than those expressly agreed upon in the written contract.

3. Promissory Estoppel

Galtere also seeks to recover under a promissory estoppel theory. A claim for promissory estoppel requires a plaintiff to prove:

> (1) a clear and definite promise; (2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his substantial detriment in

>   reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Kunde*, 920 N.W.2d at 810 (quoting *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 49 (Iowa 1999)). Promissory estoppel requires "strict proof" for each element. *Kolkman v. Roth*, 656 N.W.2d 148, 156 (Iowa 2003) (citing *Schoff*, 604 N.W.2d at 48–49). Iowa courts require "much more than mere nonperformance of a promise . . . to obtain the benefits of promissory estoppel." *Id*. (citing *Warder & Lee Elevator, Inc. v. Britten*, 274 N.W.2d 339, 343 (Iowa 1979)). The focus of the promissory estoppel doctrine is the "protection of reliance-type interests." *Kunde*, 920 N.W.2d at 810.

Galtere insists that it provided funds in reliance on Harvest Capital's promise that the money would be repaid when the "farm" became profitable and before management fees were paid. [ECF No. 49-1 at 5–6]. The company maintains that it would not have paid the money if Harvest Capital had not agreed to repay the funds pursuant to these terms. Accordingly, Galtere argues that it has established a claim for promissory estoppel.

Promissory estoppel is a doctrine that makes parties "'liable for their promises despite [the] absence of' consideration required under contract law." *Kolkman*, 656 N.W.2d at 152 (quoting *Schoff*, 604 N.W.2d at 48). Thus, "a plaintiff may not assert a claim of promissory estoppel if the promise at issue is encompassed by a written and formal contract." *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 942 (S.D. Iowa 2018); *see also Cy Charley's Firestone, Inc. v. Running*, No. 11-0211, 2011 WL 6668039, at *6 (Iowa Ct. App. Dec. 21, 2011) ("[B]ecause promissory estoppel is invoked to form a contract, 'promissory estoppel does not apply when the dispute arises out of a valid contract between the parties.'") (quoting 28 Am. Jur. 2d *Estoppel and Waiver*, § 54, at 523 (2011)).

Courts applying Iowa law have regularly rejected such attempts by plaintiffs to recast a contract claim in equity. *See Scott v. Grinnell Mut. Reinsurance Co.*, 653 N.W.2d 556, 562 (Iowa 2002) (holding "the law will not imply a contract where there is an express contract") (cleaned up) (citation omitted); *John T. Jones Constr. Co. v. Hoot Gen. Constr.*, 543 F. Supp. 2d 982, 1021 (S.D. Iowa 2008) (explaining that if a plaintiff "has a complete remedy at law for breach of contract there is no reason to resort to equity"); *PFS Distrib. Co. v. Raduechel*, 387 F. Supp. 2d 1020, 1026 (S.D. Iowa 2005) (noting that "promissory estoppel may not be used to enforce a right which has been confirmed in writing").

## *B. Analysis*

Galtere's claims for unjust enrichment and promissory estoppel both arise out of the same transaction that was memorialized in the Transaction Summary. This is evident from the Complaint, which frames the funding arrangement and its repayment terms as a single integrated transaction. [ECF No. 1 ¶¶ 10–18]. The fact that Galtere now characterizes certain promises as separate from the Transaction Summary does not change their fundamental connection to the same subject matter.

Galtere emphasizes that it provided the funds when Harvest Capital told the company it was "done for" without badly needed financial support immediately to keep the farm solvent. [ECF No. 49-1 at 3]. However, this context actually reinforces that the subsequent Transaction Summary was intended to memorialize the parties' complete agreement regarding these emergency funds. The timing and circumstances show that the oral discussions about funding and repayment were part of a single integrated transaction that culminated in the Transaction Summary. Just because Harvest Capital had an urgent need for funding which preceded the formal

documentation does not create a separate and independent promise outside the scope of the agreement.

Moreover, the fact that the alleged oral promises were made before executing the Transaction Summary undermines—rather than supports—Galtere's position. Under Iowa law, "promissory estoppel may not be used to enforce a right which has been confirmed in writing." *PFS Distrib. Co.*, 387 F. Supp. 2d at 1026. Here, the discussions between Galtere and Harvest Capital about funding and repayment led directly to the Transaction Summary, which expressly defined when and how repayment would occur. Allowing Galtere to enforce alleged prior oral promises with different repayment terms would render the written agreement meaningless. Galtere's attempts to distinguish the implied contract claims are unconvincing for other reasons.

First, Galtere argues that because GRAF never paid or received money, the Transaction Summary cannot preclude implied claims about funds actually advanced. This argument improperly conflates the existence of an express contract with the performance of its terms. The Transaction Summary explicitly addressed the conditions for repayment—GRAF generating fees. The reality that this condition never occurred does not negate the fact that the parties had an express agreement about it.

Second, the reliance on *Kunde* for support is misplaced. In *Kunde*, the Iowa Supreme Court held that a farm lease did not preclude a promissory estoppel claim regarding an option to purchase because they were separate matters. 920 N.W.2d at 808 (concluding that "the promissory estoppel theory in this case rests upon the notion that Kunde made the improvements on the land that were unrecoverable under the farm lease in reliance upon a promise of an option to purchase the land"). By contrast, the Transaction Summary and the implied contract alleged by Galtere concern the same funding arrangement.

Third, Galtere's attempt to recharacterize the funding as "loans" separate from the Transaction Summary must fail. The Court has already determined that the Transaction Summary unambiguously covered this funding arrangement. Importantly, Galtere does not seek to recover for additional matters outside the scope of the Transaction Summary, such as unanticipated expenses or other services. Rather, it seeks to modify the express repayment terms by substituting the farm's profitability for GRAF generating fees as the condition triggering repayment. Allowing Galtere to proceed on an implied contract theory would effectively allow the company to circumvent the express terms of the written agreement. Iowa law prohibits use of an implied contract theory for this purpose. *See Kunde*, 920 N.W.2d at 808 (holding that "[t]he existence of an express contract on these matters prevents Kunde from circumventing their agreement by seeking to use theories of unjust enrichment and quantum meruit to recover for improvements to which he was plainly not entitled under the terms of the contract.").

In summary, the Court cannot disregard the unambiguous terms of the Transaction Summary or case law regarding the relationship between express and implied contracts. Galtere is not entitled to pursue alternative theories that would effectively rewrite the parties' agreement because this condition did not occur.

### III.   CONCLUSION

For the reasons discussed above, Harvest Capital's Motion for Summary Judgment is GRANTED. [ECF No. 48]. Galtere's Motion for Summary Judgment is DENIED. [ECF No. 49].

IT IS SO ORDERED.

Dated this 21st day of November, 2024.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT